UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOE,

      Plaintiff,

– against –

COLUMBIA UNIVERSITY and
TRUSTEES OF COLUMBIA
UNIVERSITY,

      Defendants.

**OPINION & ORDER**

No. 19 Civ. 5357 (ER)

Ramos, D.J.:

  Plaintiff John Doe ("Doe") brings this action against Columbia University and its Trustees ("Columbia") alleging that they breached an implied contract by improperly denying him a master's degree. Doc. 22 ¶ 38. This contract was allegedly breached when Columbia expelled him from campus without following the applicable procedures and standards of discipline. Doc. 22 ¶¶ 16, 17, 22, 24; Doc. 23, 2–4. On September 25, 2019, Columbia moved to dismiss the complaint for failure to state a claim upon which relief can be granted. Doc. 19.

  For the reasons stated below, Columbia's motion to dismiss is GRANTED.[1]

## I. BACKGROUND

### A. Factual Background

  Doe is a Chinese citizen and former student in Columbia's one-and-a-half-year-long graduate program in the School of Professional Studies. Doc. 22 ¶¶ 2, 10. Doe submitted his

---

[1] Pending before the Court is also Doe's motion to proceed anonymously. Doc. 5. Because the motion to dismiss has been granted, this motion is dismissed as moot.

application through a Chinese agency "authorized"[2] by the school. *Id*. ¶ 9. He maintains that all of his application documents were true and correct. *Id*. In 2017, Columbia accepted Doe into the program. *Id*. at 10. After his enrollment, Doe paid his tuition in full, completed all coursework, and maintained a GPA of 3.30. *Id*. He was set to receive a master's degree in December 2018. *Id*.

On September 4, 2018, Doe received an email from Columbia stating that he had been involved in "[d]ishonesty," a prohibited behavior under the Student Conduct and Community Standards ("Community Standards"). *Id.* ¶ 13. "Dishonesty" is listed as an academic violation under the Community Standards and the "conferral of any degree or granting of any certificate are strictly subject to the disciplinary powers of the University." Doc. 21-2, 1. Columbia is "vested with authority" over this process. *Id.* The email stated that a disciplinary hearing would be held to discuss the matter on Thursday, September 13, 2018 at 10:00 am via "Zoom," a web-based video conference platform. Doc. 21-1. Columbia told Doe that his application contained false materials, including another student's documents. *Id*. The email further stated, "Your file includes a transcript submitted with your application . . . and the application prompt confirming the accuracy of all admissions materials." *Id*. Doe was then permitted to submit a written statement to clarify the allegations. *Id*. Doe asserts that he is still unaware of which admissions materials were allegedly false, or whether the agency had put any false materials into his application. Doc. 22 ¶¶ 16–17.

Doe was expelled from Columbia on the same day of the disciplinary hearing. *Id*. ¶ 19. Doe appealed the expulsion and, according to Doe, Columbia vacated its decision, allowing Doe to continue his studies. *Id.* ¶ 21. On November 19, 2018, weeks before Doe was to graduate,

---

[2] According to the Amended Complaint, the agency was "in the charge of a dean of the school of Professional Studies." Doc. 22 ¶ 9.

Columbia issued a second letter expelling him. *Id.* ¶ 22. Doe argues that Columbia did not give him notice and did not conduct a hearing before issuing the second letter. *Id*. Doe also alleges that Columbia expelled him and numerous other international students "to cut costs and expenses." *Id*. ¶¶ 24, 26. Doe contends that Columbia was facing an unrelated $60 million lawsuit involving an allegation that one of its deans coerced a female student into sex.[3] *Id*. ¶ 25. Doe claims that by expelling international students, Columbia was able to keep the tuition that had already been paid and avoid expenses without fear of being sued since the students' visas had expired. *Id*. ¶¶ 26–28.

Columbia's disciplinary process begins when a report is electronically filed with the Student Conduct and Community Standards Board (the "Board"). Doc. 21-2. Through this process, Columbia "investigate[s] and respond[s] to allegations of behavioral or academic misconduct" for "any activity that occurs on or off-campus that impinges on the rights of other students and community members." *Id*. After receiving a report, the Board determines whether disciplinary action is appropriate. *Id*. If the Board determines that a disciplinary hearing is necessary, the student will receive notice via his or her university email with the hearing information. *Id*. To prepare for the hearing, a student is instructed to schedule a review of his or her file and prepare a written statement describing his or her perspective of the allegations. *Id.* The Community Standards provide, "During the file review, the student will receive an overview of the Dean's Discipline process, and will then be permitted to review his/her file." *Id*.

During the disciplinary hearing, the student is presented with information pertaining to the allegation by at least two hearing officers. *Id.* If a student is found responsible for a

---

[3] Doe references *Doe v. The Trustees of Columbia University*, No. 1:18-cv-07831-PAC, a case pending in this District filed against Columbia and its Trustees. As that Complaint makes clear, the Defendant in that case is the Dean of the School of General Studies, not the School of Professional Studies.

violation, a sanction will be issued, and the student will be notified within ten business days. *Id*. Sanctions include but are not limited to expulsion and "other sanctions that [the Board] determine[s] to be appropriate." *Id.* Under the Community Standards, Columbia has the authority to expel a student who has "violated the policy" and "is not in good disciplinary standing." *Id.*

A student may appeal any sanction imposed. *Id*. The appellate officer may affirm the sanction, revise the sanction, or return the matter for further consideration. *Id*. He or she will notify the student in writing of the decision "at his/her earliest convenience." *Id.* The Community Standards do not provide a student with the right to notice or another hearing following an appeal request. *Id.*

### B. Procedural History

Doe filed the instant suit on June 7, 2019. Doc. 1. He brings six causes of action: (1) breach of contract; (2) breach of covenant of good faith and fair dealing; (3) arbitrary expulsion; (4) unjust enrichment; (5) equitable estoppel; and (6) declaratory judgment. Doc. 22 ¶¶ 34–74. On September 25, 2019, Columbia moved to dismiss Doe's complaint for failure to state a claim upon which relief can be granted. Doc. 19. On October 16, 2019, Doe filed an amended complaint. Doc. 22. Columbia subsequently filed a letter requesting that its motion be deemed as against the amended complaint. Doc. 24. The Court granted this request. Doc. 25.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citations omitted).

Consequently, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court accepts all plausible and nonconclusory factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ."). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

## III. DISCUSSION

Columbia makes two arguments in the instant motion. First, Columbia asserts that all of Doe's claims are time-barred because any challenges to a university decision must have been brought within four months pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") Article 78, which he failed to do. Doc. 20, 1. Next, Columbia argues that even if the claims are not time-barred pursuant to Article 78's four-month statute of limitations, Doe's complaint fails to state any claim upon which relief can be granted. *Id*. at 2. Doe argues that his claims are not time-barred because the six-year statute of limitations for breach of contract claims applies. Doc 23, 14.

### A. Article 78

Under New York law, Article 78 proceedings "are typically the avenue for parties challenging administrative actions by governmental agencies or by the decisionmaking [*sic*] bodies of private entities." *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 205 (S.D.N.Y. 1998). Entities subject to Article 78 include both public and private universities. N.Y. C.P.L.R. § 7802(a) (McKinney); *see also Karlen v. New York Univ.,* No. 78 Civ. 3416 (GLG), 1980 WL 240, at *2 (S.D.N.Y. Sept. 17, 1980) (finding that Article 78 applies to private institutions, and that a university is a "body or officer" whose actions may be reviewed thereunder). Challenges brought under Article 78 are subject to a four-month statute of limitations. N.Y. C.P.L.R. § 217 (McKinney).

New York courts have generally found that with regard to Article 78 challenges to a university's decision, "courts must defer to the university's effort to substantially observe the rules, regulations, and procedures it has announced in advance, and will disturb their decisions only if their actions are arbitrary, irrational, or in bad faith." *Rosenthal v. New York Univ.,* 482

F. App'x. 609, 612 (2d Cir. 2012); *see also Matter of Susan M. v. New York Law Sch.,* 76 N.Y.2d 241, 246 (1990) (same). The court must do so because "decisions of educational institutions involve the exercise of subjective professional judgment," and thus, "public policy compels a restraint which removes such determinations from judicial scrutiny." *Gertler v. Goodgold,* 107 A.D.2d 481, 485, *aff'd*, 66 N.Y.2d 946, (N.Y. App. Div. 1st Dep't 1985); *see also Maas v. Cornell Univ.*, 94 N.Y.2d 87, 92 (1999) ("[T]he administrative decisions of educational institutions involve the exercise of highly specialized professional judgment and these institutions are, for the most part, better suited to make relatively final decisions concerning wholly internal matters.") (internal citation omitted).

A variety of actions challenging academic decisions made by private educational institutions have been limited to Article 78: grading disputes, dismissals, expulsions, suspensions, and decisions regarding whether a student has fulfilled the requirements for graduation. *Ansari v. New York Univ.*, No. 96 Civ. 5280(MBM), 1997 WL 257473, at *2 (S.D.N.Y May 16, 1997). While claims challenging these decisions have often been "couched in terms of 'contract' and 'tort' to avoid the applicable statutes of limitations," courts have been careful to dismiss them as time-barred under Article 78's four-month statute of limitations where appropriate. *See Demas v. Levitsky*, 291 A.D.2d 653, 660 (N.Y. App. Div. 3d Dep't 2002) (dismissing plaintiff's claims because they challenged Cornell's academic and administrative decision to reject plaintiff's administrative charges against university professor, which could only be reviewed in an Article 78 proceeding); *see also Padiyar v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, 73 A.D.3d 634, 635 (N.Y. App. Div. 1st Dep't 2010) (finding that while plaintiff's complaint was "couched in terms of unlawful discrimination and breach of contract,"

it was actually a challenge to the university's academic and administrative decisions, thus making it subject to Article 78's statute of limitations).

Here, Doe argues that this is not a case seeking judicial review of a school's assessment of academic performance, and therefore it is not a case that must be brought in an Article 78 proceeding. Doc. 23, 14. Doe further asserts that neither the court nor the jury would review "any educational decisions of the sort which should be left to educators." *Id*. The Court finds that Doe's claims for breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment are contractual in nature and *cannot* be brought in an Article 78 proceeding. *See Sarwar v. New York Coll. Of Osteopathic Med. Of New York Inst. Of Tech.*, 150 A.D.3d 913, 914 (N.Y. App. Div. 2d Dep't 2017) (affirming New York Supreme Court's decision to not convert plaintiff's action, alleging breach of contract and unjust enrichment claims, into an Article 78 proceeding).

However, Doe's claims for arbitrary expulsion, equitable estoppel, and declaratory judgment are not contractual in nature. Pursuant to these claims, Doe requests that: (1) the outcome and findings made by Columbia regarding the decision to expel Doe for dishonesty be reversed; (2) Doe's reputation be restored; (3) Doe's disciplinary record be expunged; (4) the record of Doe's expulsion from Columbia University be removed from his education file; (5) the action of Columbia in expelling Doe and barring him from the campus be nullified; and (6) Doe be immediately reinstated to Columbia and be awarded a master's degree. Doc. 22 ¶ 74. The requested relief *would* require the Court to overturn academic decisions that Columbia made pursuant to its authority, and thus is subject to Article 78's four-month statute of limitations. *See Padiyar*, 73 A.D.3d at 635.

Columbia claims that Doe submitted false information in his application for admission to Columbia and, because of this, was responsible for "dishonesty" under Columbia's Community Standards. Doc. 20, 2–3. "Dishonesty" is listed as an *academic violation* and the "conferral of any degree or the granting of any certificate are strictly subject to the disciplinary powers of the University." Doc. 21-2, 1–2. Under these same Community Standards, Columbia is "vested with authority" over this process. *Id*. at 1. This authority includes the ability to expel a student who has "violated the policy" and "is not in good disciplinary standing." *Id.* at 14. To overturn Columbia's decision as a professional educator would be improper because an institution such as Columbia is "better suited to make relatively final decisions concerning wholly internal matters." *See Maas*, 94 N.Y.2d at 92 (citing *Matter of Olsson v. Board of Higher Educ.*, 49 N.Y.2d 408, 413 (1980)). Since Columbia's authority to expel a student based on an *academic violation* is clearly stated, Doe's claim that Columbia's decision to deny him a degree was based on purely financial considerations is merely an attempt to couch this challenge in terms of "contract" to avoid Article 78's statute of limitations.[4] Doc. 22 ¶ 24; *see Demas*, 291 A.D.2d at 660.

Columbia expelled Doe on September 13, 2018 and affirmed its decision on November 19, 2018. Doc. 22 ¶¶ 13–19, 22–23. Doe filed his complaint on June 7, 2019, nearly eight months after Columbia affirmed its decision. Doc. 1. Since Doe is challenging Columbia's academic decision, which should have been brought under Article 78, Doe's claims for arbitrary expulsion, equitable estoppel, and declaratory judgment are barred under Article 78's four-month statute of limitations. The Court therefore dismisses Doe's third, fifth, and sixth causes of action.

---

[4] In any event, these allegations are completely conclusory.

B. **Breach of Contract**

Doe argues that he has a viable breach of contract claim by alleging specific promises made by Columbia in its Community Standards. Doc. 22 ¶ 42. Columbia states that Doe is unable to bring a breach of contract claim because he should have brought an Article 78 proceeding. Doc. 20, 8. Article 78 proceedings are not the appropriate mechanism for enforcing private contractual rights. *See Ward v. New York Univ.*, No. 99 Civ. 8733(RCC), 2000 WL 1448641, at *7 (S.D.N.Y. Sept. 28, 2000). However, even if the breach of contract claim is proper, Columbia argues that it fails since Doe does not dispute that his application to Columbia contained false information. Doc. 20, 10. Additionally, if the claim does not fail on this basis alone, Columbia argues that the claim is not viable because Doe fails to make specific, non-conclusory allegations regarding how Columbia failed to comply with its disciplinary procedures. *Id.*

An implied contract arises between a student and university promising that, "if the student complies with the terms prescribed by the university, he will obtain the degree he seeks." *Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 372 (S.D.N.Y. 2017) (quoting *Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654, 654 (N.Y. App. Div. 2d Dep't 1987)). The terms of the implied contract are "contained in the university's bulletins, circulars and regulations made available to the student." *Papelino v. Albany College of Pharmacy of Union University*, 633 F.3d 81, 93 (2d Cir. 2011) (quoting *Vought*, 127 A.D.2d at 654); *Tedeschi v. Wagner Coll.*, 49 N.Y.2d 652, 660 (1980) ("[W]hen a university has adopted a rule or guideline establishing the procedure to be followed in relation to suspension or expulsion that procedure must be substantially observed.").

A plaintiff may assert a cause of action for breach of contract against a university in certain circumstances. *Habitzreuther v. Cornell Univ.*, No. 14 Civ. 1229 (GLS/TWD), 2015 WL 5023719, at *4 (N.D.N.Y. Aug. 25, 2015). To do so, a plaintiff must identify: (1) a specific contract, (2) specified services offered or promises made, and (3) the university's failure to provide those services or keep those promises. *See id.* (citing *Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 92 (N.Y. App. Div. 2d Dep't 1982)); *see also Ansari*, 1997 WL 257473, at *3 (noting viable contract action exists when university was to provide specified services but failed to meet its obligation).

While a university is required to "act in good faith in its dealing with its students," the students must "fulfill [their] end of the bargain by satisfying the university's academic requirements and complying with its procedures." *Papelino*, 633 F.3d at 93. When students do not fulfill their end of the bargain, "a school has the authority to rescind a student's admission from the school, even after course work has begun or been completed, where there were material misrepresentations or omissions in the student's application." *Salvador v. Touro Coll.*, 139 A.D.3d 1, 7 (N.Y. App. Div. 1st Dep't 2016) (citing *Matter of Powers v. St. John's Univ. Sch. of Law*, 25 N.Y.3d 210, 217 (2015)).

Columbia erroneously contends that Doe's claim must fail because he does not dispute that his application contained false materials. Doe clearly disputes this allegation. He specifically asserts that all of the application documents submitted to the agency were "true and correct." Doc. 22 ¶¶ 9, 16. Even today, he states that he is "unaware of which admissions material was alleged by Columbia University to be false, or whether the agency had put any false materials in [his] admission documents." *Id.* ¶ 17. Doe states that he "should not be held liable for the wrongs done by [Columbia]'s own agency." *Id.* ¶ 18.

Doe also sufficiently identifies the existence of a contract. In 2017, he applied and was admitted into Columbia's one-and-a-half-year-long graduate program in the School of Professional Studies. Doc. 22 ¶ 10. Doe joined the program in the fall of 2017 and expected to receive his master's degree upon successful completion of all course work in December 2018. *Id*. Doe asserts that he has paid tuition in full, substantially completed all coursework, and maintained a 3.30 GPA. *Id*. The terms of this contract are contained in Columbia's Community Standards as discussed above. *See Papelino,* 633 F.3d at 93.

Doe identifies "specific procedures" that Columbia allegedly failed to follow, including that: (1) the notice for the September 13, 2018 hearing did not include a summary of the allegations against him; (2) the hearing was held over the telephone; (3) before issuing the second letter of decision to expel him on November 19, 2018, Columbia did not serve any prior notice and did not conduct a hearing; (4) the sanction of expulsion is excessive since Columbia was unable to show how he was dishonest; and (5) Columbia took his money, wasted his time for one-and-a-half years, and refused to award him the promised degree. Doc. 23, 10.

The Court agrees with Columbia's contention that the claim is not viable because Doe fails to make specific, non-conclusory allegations regarding how Columbia failed to comply with its disciplinary procedures. Doc. 20 ¶ 19. As stated in *Ward*, "a viable contract action exists where the school was to 'provide for certain specified services . . . and the school failed to meet its obligation.'" 2000 WL 1448641, at *3. The *Ward* plaintiff defined numerous "general policy statements" and "broad and unspecified procedures and guidelines" in the university's policy as the "specific services which were promised but not provided." *Id*. at *4.

For example, the plaintiff asserted that defendant promised to "provide a great learning environment for adult students," among other promises. *Id*. The court found that the "promised

services" were merely broad pronouncements of the university's compliance with anti-discrimination laws, promising equitable treatment of all students. *Id*. Thus, the plaintiff did not sufficiently allege a basis for a breach of contract claim. *Id*.

In cases finding a viable breach of contract action, "the services identified were specifically designated and discrete promises," such as the provision of a designated number of hours of instruction, state of the art facilities, or supervision by field supervisors. *Id*.; *see, e.g.*, *Clarke v. Trs. of Columbia Univ. of City of New York*, No. 95 Civ. 10627 (PKL), 1996 WL 609271, at *1 (S.D.N.Y. Oct. 23, 1996) (field supervisor); *Ansari*, 1997 WL 257473, at *3 (designated number of hours of instruction). Such is not the case here.

Here, Doe argues that in expelling him, Columbia failed to comply with "specific rules and procedures." Doc. 23, 10. The record before the Court clearly establishes that Columbia followed its procedures. Columbia provided a summary of the allegations against Doe in its September 4, 2018 letter when it stated, "Student Conduct and Community Standards has received a report . . . regarding your alleged involvement in the following prohibited behavior: Dishonesty." Doc. 21-1 (internal citation omitted). The notice continues, "*Specifically, it is alleged that false information was submitted within your application for admission to Columbia University.*" *Id*. Doe asserts that by failing to mention the exact admissions materials that were purportedly false, Columbia deprived him of the opportunity to prepare for the hearing. Doc. 23, 10.

However, the September 4 letter clearly mentioned the "transcript submitted with [Doe's] application" and the application prompt "confirming the accuracy of all admissions materials." Doc. 21-1. Furthermore, the Community Standards did not require Columbia to hold an in-

person hearing. Doc. 21-2. Columbia made Doe aware that a hearing would be held via web conference in its September 4, 2018 letter. Doc. 21-1.

Doe next characterizes Columbia's November 19, 2018 letter as a "second letter decision." Doc. 23, 10. Doe asserts that he was not provided notice and did not receive a hearing prior to the second decision. *Id*. Doe's characterization is incorrect. After being informed of his expulsion on the afternoon of September 13, 2018, Doe timely initiated an appeal. Doc. 21-4. The Board provides that an appellate officer may respond to an appeal request "at his/her earliest convenience." Doc. 21-2, 16. The Board does not provide a student with the right to notice or another hearing following an appeal request. *See generally id*. The appellate officer issued his decision in the November 19th letter. Doc. 21-5.

Doe received a prompt requiring him to confirm the accuracy of all his admission materials at the time he applied to Columbia. *See also Matter of Powers*, 25 N.Y.3d at 213 (affirming in Article 78 proceeding that decision to expel did not warrant judicial intervention where university discovered material misrepresentations and omissions in student's application). "Given [] notice [to plaintiff] and the school's unquestionable interest in ensuring the integrity of the future [professionals] under its tutelage, the penalty of rescission was not excessive." *Id*. In sum, Columbia did not improperly take Doe's money, waste his time, or expel him; it properly refused him a degree. Therefore, Doe's claim for breach of contract is dismissed.

### C. Breach of the Implied Covenant of Good Faith and Fair Dealing

Doe's claim for breach of the implied covenant of good faith and fair dealing is redundant. When a claim for breach of the implied covenant of good faith and fair dealing arises out of the same facts as a breach of implied contract claim, "New York law does not permit such claims to proceed where a breach of contract claim is also pled." *Larson v. Eney,* No. 08 Civ.

3513(DC), 2009 WL 321256, at *10 (S.D.N.Y. Feb. 10, 2009); *see also Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) (same).

Here, Doe's claim merely restates the same allegations as contained in the breach of contract claim. He "repeats and realleges each and every allegation" set forth in the breach of contract claim "as if fully set forth herein." Doc. 22 ¶ 47. Furthermore, Doe alleges he is entitled to recover damages for a breach of the implied covenant of good faith and fair dealing due to Columbia's "breach of the . . . implied contractual obligations described above." *Id.* ¶ 51. Therefore, this claim must also be dismissed.

### D. Unjust Enrichment

Finally, Doe does not have a viable claim for unjust enrichment. "There can be no unjust enrichment claim where defendant had the right to act as it did pursuant to a contract between the parties." *Horowitz v. New York Blood Ctr., Inc.*, No. 100382/03, 2003 WL 22287468, at *4 (N.Y. Sup. Ct. N.Y. Cty. 2002) (internal citation omitted); *see also Onanuga v. Pfizer, Inc.*, No. 03 Civ. 5405(CM)(GAY.), 2004 WL 601689, *at 4 (S.D.N.Y. 2004) (stating that existence of valid contract ordinarily precludes recovery in quasi-contract for events arising out of same subject matter).

Doe's unjust enrichment claim merely restates the same allegations as in the breach of contract claim. As discussed above, Columbia abided the procedures set forth in its Community Standards, which established the terms of the implied contract between Doe and Columbia. Since Columbia had the right to act as it did pursuant to its implied contract with Doe, the unjust enrichment claim cannot stand. Therefore, Doe's unjust enrichment claim must be dismissed as well.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Columbia's motion to dismiss as to all counts. As mentioned above, Doe's motion to proceed anonymously is dismissed as moot. The Clerk of Court is respectfully directed to terminate the motions, Docs. 5, 19, and to close the case.

It is SO ORDERED.

Dated: March 31, 2020
New York, New York

_____
Edgardo Ramos, U.S.D.J